DECISION
{¶ 1} Relator, Pablo Poole, Jr., has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying his application for permanent total disability compensation and to enter a new order granting said compensation. In the alternative, relator requests that this court issue a writ that orders the commission to vacate its order denying his application for wage loss compensation pursuant to R.C. 4123.56(A), and to enter a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. In his decision (attached as Appendix A), the magistrate concluded that relator failed to demonstrate that the commission had abused its discretion and that this court should deny the requested writ. No objections have been filed to the decision of the magistrate.
 {¶ 3} Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53(C), we adopt that decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we deny the requested writ.
Writ of mandamus denied.
Brown, P.J., and Klatt, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Pablo Poole, Jr., :
 Relator, :
v. : No. 04AP-424
The Industrial Commission of Ohio : (REGULAR CALENDAR)
and City of Cleveland, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on November 12, 2004 Shapiro, Shapiro and Shapiro Co., L.P.A., Daniel L. Shapiro and LeahP. VanderKaay, for relator.
Jim Petro, Attorney General, and Shareef Rabaa, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} In this original action, relator, Pablo Poole, Jr., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order Respondents. denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 5} In the alternative, relator requests that the writ order the commission to vacate its order denying him R.C. 4123.56(A) wage loss compensation beginning April 18, 2003, and to enter an order granting said compensation. Findings of Fact:
 {¶ 6} 1. On December 18, 1998, relator sustained an industrial injury while employed as a laborer for the water department of respondent City of Cleveland. The industrial claim is allowed for: "sprain lumbar region; herniated discs at L3-4, L4-5 and L5-S1 with impingement on the L3 nerve root, L4 nerve root and the S1 nerve roots bilaterally with radiculopathy," and is assigned claim number 98-603637.
 {¶ 7} 2. On February 25, 2002, relator filed an application for PTD compensation. In support, relator submitted a report dated December 12, 2001, from Dr. Michael A. Frasca who opined that the industrial injury made relator "a candidate for total disability."
 {¶ 8} 3. On May 23, 2002, relator was examined by David M. Rosenberg, M.D., on behalf of the commission. Dr. Rosenberg wrote:
* * * Mr. Poole has continued manifestations related to his back surgery and previous disc. He has chronic pain with some radicular manifestations with absent deep tendon reflexes as noted above. His condition would best be categorized as DRE lumbosacral category V (page 102 of the Fourth Edition AMA Guides), radiculopathy and loss of motion segment integrity. The previously [sic] surgery has resulted in the loss of motion segment integrity, and he continues to have radiculopathy. He would be 25% whole person impaired. * * *
In CONCLUSION, it can be stated with a reasonable degree of medical certainty, for Mr. Poole's back problems he has 25% whole person impairment. He has reached maximum medical improvement, and could perform sedentary types of jobs which allowed him to intermittently rest. * * *
(Emphasis sic.)
 {¶ 9} 4. The commission requested an employability assessment report from Larry G. Kontosh, a vocational expert. The Kontosh report, dated July 10, 2002, responds to the following query:
Based on separate considerations of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), the following occupations are identified which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation or brief skill training.
(Emphasis omitted.)
 {¶ 10} Indicating acceptance of Dr. Rosenberg's reports, Kontosh listed the following employment options: "Telephone solicitor, sorter, small parts assembler."
 {¶ 11} The Kontosh report further states:
* * * How if at all do the claimant's age, education, work history, or other factors (physical, psychological, sociological) affect his/her ability to meet the basic demands of entry level occupations?
Age: The claimant is 43 years old. His age is a not [sic] vocational disadvantage.
Education: The claimant is a high school graduate. This is a vocational advantage.
Work History: Work history includes semi-skilled work. Skills do not transfer below medium level work.
Other: The claimant last worked in 2001. This 1 year absence from the active labor force is not a significant vocational disadvantage.
* * * Does review of the background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level sedentary or light jobs?
Claimant is a high school graduate. He can learn new work.
(Emphasis omitted.)
 {¶ 12} The Kontosh report further states:
* * * Work History:
 Job * * * Skill Strength Dates
 Title Level Level
 Municipal
 services
 worker * * * Semi-skilled Heavy 1988-2001
 Security
 guard * * * Semi-skilled Light 1987-1988
 Sanitation Very
 laborer * * * Unskilled heavy 1977-1978

(Emphasis omitted.)
 {¶ 13} 5. Following a September 12, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's application for PTD compensation. The SHO's order states:
After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 02/25/2002, for Permanent and Total Disability Compensation, be denied. All medical and vocational proof on file was reviewed and considered. This order is based on the reports of Dr. David Rosenberg and Dr. Larry Kontosh.
Dr. Rosenberg examined the claimant at the request of the Industrial Commission. Dr. Rosenberg indicated that, as a result of the injuries allowed in the three claims referenced above, the claimant had a 25% permanent partial impairment. Dr. Rosenberg also stated that the claimant retained the physical ability to perform those sedentary jobs that would allow him to rest on an intermittent basis.
Dr. Kontosh, an employability assessor, reviewed the record on behalf of the Industrial Commission. He said that the claimant's former position of employment as a municipal services worker in the City of Cleveland Water Department was heavy work of a semi-skilled nature. Dr. Kontosh also points out that there were vocational options that were consistent with the claimant's physical capabilities as defined by Dr. Rosenberg. Dr. Kontosh listed positions as a telephone solicitor, a sorter and a small parts assembler.
The Staff Hearing Officer finds, based on these two reports, that the residuals of the injuries allowed in the claims cited above prevent the claimant from returning to his former position of employment. The Staff Hearing Officer also finds that the claimant has the physical capacity to engage in some sustained remunerative employment of a sedentary nature.
The remaining issue is whether the claimant's nonmedical disability factors would prevent him from performing in the sedentary occupations identified by Dr. Kontosh. At forty-four years of age the claimant is a younger worker. This is a vocational asset that would aid the claimant in making a vocational transition. The claimant is a high school graduate who also has over one year of college. This is another vocational asset which would indicate that the claimant would have no difficulty with the academic demands of the entry level positions described by Dr. Kontosh. The claimant has had a varied vocational history consisting of positions as park ranger, a janitor and a municipal services worker in a water department. Dr. Kontosh characterizes the latter job as semi-skilled work. This vocational history demonstrates that the claimant has the ability to learn work skills and to function in a variety of work environments. Both of these things are assets.
In summary the Staff Hearing Officer finds the claimant's nonmedical disability factors are assets that would assist him in making a transition to one of the sedentary positions identified by Dr. Kontosh. There is nothing in the nonmedical disability factors that would prevent the claimant from performing sedentary work. As such, the Staff Hearing Officer finds that the claimant retains the capacity to engage in some types of sustained remunerative employment. The claimant, therefore, is not permanently and total[ly] disabled. The application is denied.
 {¶ 14} 6. On June 19, 2003, relator filed an application for wage loss compensation on form C-140 which the Ohio Bureau of Workers' Compensation ("bureau") provides for that purpose. Relator completed the front side of the form which requests a "work history" among other information. The form instructs the applicant to "have your attending physician complete the medical report on the back of this application." Apparently, relator failed to have his attending physician complete the medical report on the back side of the form.
 {¶ 15} 7. On the front side of the C-140, relator indicated that he was requesting "nonworking" wage loss compensation beginning April 18, 2003.
 {¶ 16} 8. In support of his wage loss application, relator submitted wage loss statements on forms provided by the bureau.
 {¶ 17} 9. On September 16, 2003, the bureau referred the application to the commission for adjudication.
 {¶ 18} 10. Following an October 30, 2003 hearing, a district hearing officer ("DHO") mailed an order on November 1, 2003, denying the wage loss application. The DHO's order states:
The District Hearing Officer denies wage loss from 04/18/2003 to present, for lack of contemporaneous permanent medical restrictions related to allowed conditions.
 {¶ 19} 11. Relator administratively appealed the DHO's order of October 30, 2003.
 {¶ 20} 12. Following a December 10, 2003 hearing, an SHO issued an order stating:
The order of the District Hearing Officer, from the hearing dated 10/30/2003, is modified to the following extent:
The Staff Hearing Officer denies claimant's wage loss (C-140) request for payment of non-working wage loss compensation for the period 04/18/2003 to present. The District Hearing Officer's order of 11/01/2003 is modified to indicate that there is a limited amount of medical evidence (Dr. Rosenberg's 05/23/2002 report) found probative by the Staff Hearing Officer. Claimant argues that, because Dr. Rosenberg's report was done in response to claimant's IC-2 application (02/28/2002) [PTD application], it should be accepted in lieu of the ongoing, periodic medical reports required under O.A.C. 4125-1-01 (C) (3) as Dr. Rosenberg affirms that claimant's condition is `permanent'. The Staff Hearing Officer finds that the intent of the periodic reports required under O.A.C. 4125-1-01 (C)(3) is to provide a current assessment of claimant's restrictions so that an accurate determination of their role in claimant's loss of income can be made.
The Staff Hearing Officer finds that, even in the context of a permanent, disability determination, the medical evidence must be of a fairly recent vintage (see, O.A.C. 4121-3-34(C)(1)). With this limitation in mind, the Staff Hearing Officer finds that the 05/23/2002 report of Dr. Rosenberg is, therefore, inadequate to document restrictions for the entire period asserted (04/18/2003 to present). More importantly, the Staff Hearing Officer finds that claimant's job search has been inadequate. Even assuming that the restrictions of Dr. Rosenberg are applicable to the entire period at issue, the Staff Hearing Officer finds that claimant's job search has not been limited to "sedentary positions with intermittent resting" nor has his job search consisted of an adequate number of weekly contacts so as to qualify him as a `good faith' search. The C-140 is denied.
 {¶ 21} 13. On April 19, 2004, relator, Pablo Poole, Jr., filed this mandamus action.
Conclusions of Law:
 {¶ 22} With respect to the commission's denial of the PTD application, two issues are presented: (1) whether Dr. Rosenberg's report constitutes some evidence that relator is medically able to perform sustained remunerative employment; and (2) whether the commission abused its discretion in its consideration of the nonmedical factors.
 {¶ 23} The magistrate finds: (1) Dr. Rosenberg's report does constitute some evidence that relator is medically able to perform sustained remunerative employment; and (2) the commission did not abuse its discretion in its consideration of the nonmedical factors.
 {¶ 24} The commission denied wage loss compensation on two independent grounds: (1) the May 23, 2002 report of Dr. Rosenberg is not time relevant to the period for which wage loss compensation is sought; and (2) relator's job search was inadequate. Relator fails to challenge the commission's finding that his job search was inadequate, which is an independent ground for denial of the wage loss application. Accordingly, relator cannot show entitlement to a writ of mandamus with respect to the commission's denial of his wage loss application.
 {¶ 25} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 26} Turning to the first issue with respect to PTD compensation, Ohio Adm. Code 4121-3-34 sets forth the commission's rules for adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B) sets forth certain definitions. Ohio Adm. Code 4121-3-34(B)(2)(a) sets forth the following definition:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from onethird to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 27} Dr. Rosenberg opines that relator "could perform sedentary types of jobs which allowed him to intermittently rest." Relator sets forth two arguments as to why he feels that Dr. Rosenberg's opinion fails to constitute some evidence supporting a commission finding that the industrial injury permits some sustained remunerative employment.
 {¶ 28} First, relator claims that, by definition, sedentary work with intermittent resting cannot be sustained employment. The commission's definition of sedentary work undermines relator's claim. According to the commission's definition, sedentary work means "sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally."
 {¶ 29} It was clearly within the commission's fact-finding discretion to read Dr. Rosenberg's intermittent rest requirement for relator's sedentary job to include the occasional walking or standing indicated in the commission's definition. That is to say, the commission could interpret Dr. Rosenberg's opinion to mean that relator can perform sedentary jobs that allow him to occasionally walk or stand because walking and standing can be viewed as resting activities when the job includes sitting most of the time.
 {¶ 30} Secondly, citing State ex rel. Malinowski v. Hordis Bros.,Inc. (1997), 79 Ohio St.3d 342, relator claims that Dr. Rosenberg's opinion is "uncertain" and therefore cannot constitute evidence upon which the commission can rely.
 {¶ 31} Equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 32} According to relator, Dr. Rosenberg's report is "uncertain because he does not address whether [relator] could perform sustained remunerative employment or not. We don't know if Dr. Rosenberg believes sedentary work with intermittent resting equates to sustained remunerative employment." (Relator's brief, at 6.) The magistrate disagrees.
 {¶ 33} Relator's argument seems to suggest that in order to be considered "certain" a doctor's opinion must include the words "sustained remunerative employment." However, there are no magic words that a doctor must use to express his opinion. Here, Dr. Rosenberg states that relator could perform sedentary types of jobs. The word "jobs" certainly indicates sustained remunerative employment.
 {¶ 34} The second issue with respect to the commission's denial of the PTD application is whether the commission abused its discretion in its consideration of the nonmedical factors.
 {¶ 35} For its review of the nonmedical factors, the commission stated reliance upon the Kontosh vocational report. The commission explained how the Kontosh report aided its own analysis of the nonmedical factors. Several vocational assets were identified: (1) at age 44 relator is a young worker; (2) he is a high school graduate with over one year of college; (3) he has a varied work history; and (4) he held a semi-skilled job at the water department. The commission found that relator's vocational assets show that he has the ability to learn work skills and to function in a variety of work environments. The commission found that relator's vocational assets would assist him in making a transition to one of the sedentary positions identified by Kontosh.
 {¶ 36} The magistrate finds no abuse of discretion with respect to the commission's consideration of the nonmedical factors.
 {¶ 37} Here, relator fails to specifically argue how the commission's nonmedical analysis is flawed. Instead, relator simply argues that his vocational picture is similar to other cases in which the court granted a writ of mandamus. That type of argument is inappropriate in mandamus. It represents an invitation for this court to conduct a de novo review or to second-guess the commission's discretion, something this court should not do.
 {¶ 38}
Turning to the wage loss compensation issue, Ohio Adm. Code 4125-1-01
sets forth the commission's rules regarding applications for wage loss compensation. Ohio Adm. Code 4125-1-01(C) states in part:
Applications for compensation for wage losses shall be filed with the bureau of workers' compensation on forms provided by the bureau. In cases involving self-insured employers, a copy of the application shall be filed with the self-insured employer. Failure to file the request on the appropriate form shall not result in the dismissal of said request, but shall result in the suspension of the application until the appropriate form is filed.
(1) The claimant must certify that all the information that is provided in the application is true and accurate to the best of his or her knowledge and further certify that he or she served a copy of the application, with copies of supporting documents, on the employer of record.
(2) A medical report shall accompany the application. The report shall contain:
(a) A list of all restrictions;
(b) An opinion on whether the restrictions are permanent or temporary;
(c) When the restrictions are temporary, an opinion as to the expected duration of the restrictions;
(d) The date of the last medical examination;
(e) The date of the report;
(f) The name of the physician who authored the report; and
(g) The physician's signature.
(3) Supplemental medical reports regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted to the bureau of workers' compensation or the self-insured employer in self-insured claims once during every ninety day period after the initial application, if the restrictions are temporary, or once during every one hundred eighty day period after the initial application, if the medical restrictions are permanent. * * *
 {¶ 39} Ohio Adm. Code 4125-1-01(C)(2) sets forth the commission's list of requirements for the medical report that shall accompany the application. However, Ohio Adm. Code 4125-1-01(C)(2) fails to set forth any requirement limiting the extent to which the examination supporting a medical report can predate the filing of the application for wage loss compensation.
 {¶ 40} As alluded to in the SHO's order of December 10, 2003, for PTD applications, the medical examination supporting the medical report must be performed within 15 months prior to the filing of the application. Ohio Adm. Code 4121-3-34(C)(1). While the filing requirements for PTD applications set forth at Ohio Adm. Code 4121-3-34(C)(1) are not applicable to wage loss applications, the SHO's order strongly suggests that the PTD filing requirement was used to bar Dr. Rosenberg's report from consideration on the wage loss application. Clearly, the commission cannot read the time of examination requirement for PTD applications into the rules for the filing of wage loss compensation.
 {¶ 41} Moreover, the SHO's reference to Ohio Adm. Code 4125-1-01(C)(3)'s provisions for supplemental medical reports fails to address the issue. Ohio Adm. Code 4125-1-01(C)(3) provides for the filing of supplemental medical reports "after the initial application."
 {¶ 42} Notwithstanding the above analysis, the SHO's order further states:
* * * More importantly, the Staff Hearing Officer finds that claimant's job search has been inadequate. Even assuming that the restrictions of Dr. Rosenberg are applicable to the entire period at issue, the Staff Hearing Officer finds that claimant's job search has not been limited to "sedentary positions with intermittent resting" nor has his job search consisted of an adequate number of weekly contacts so as to qualify as a `good faith' search. The C-140 is denied.
 {¶ 43} The above quoted portion of the SHO's order sets forth an independent ground for denial of the wage loss application which relator does not challenge in this action. Accordingly, this court need not determine whether it was an abuse of discretion for the commission to view the examination supporting Dr. Rosenberg's report as being too remote in time to support the period of the request for wage loss compensation. See State ex rel. Hiles v. Netcare Corp. (1996),76 Ohio St.3d 404.
 {¶ 44} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.